**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **FELIX WALKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) **Case No.      CIV-08-1108-D** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423, and his application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3) of the Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB and SSI on December 28, 2004 alleging a disability since December 13, 2004 (TR. 14). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 14). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on August 8, 2007 (TR. 362-411). The Plaintiff appeared in person and with his attorney and offered his testimony in support of the applications (TR. 365-404). A vocational expert (VE) testified at the request of the ALJ (TR. 405-410). The ALJ issued her decision on January 8, 2008 finding that Plaintiff was not entitled to DIB or SSI (TR. 14-22). The Appeals

Council denied the Plaintiff's request for review on August 12, 2008, and thus, the decision of the

ALJ became the final decision of the Commissioner (TR. 6-8).

**STANDARD OF REVIEW**

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be

found only where there is a conspicuous absence of credible choices or no contrary medical

evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

**DISCUSSION & FINDINGS**

In addressing the Plaintiff's disability applications the ALJ followed the five-step sequential

evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff

had not engaged in substantial gainful activity since the alleged disability onset date of December

13, 2004, so the process continued (TR. 16).  At step two, the ALJ concluded that Plaintiff's right

knee injury post surgery and sleep apnea were severe impairments (TR. 16).  At step three, the ALJ

found that the Plaintiff did not have an impairment or combination of impairments which meet or

equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18). At step four, the

ALJ found that Plaintiff lacked the residual functional capacity (RFC) to perform his past relevant

work (PRW) (TR. 20).

2

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the RFC to perform sedentary work, subject to certain limitations (TR. 18-19). The ALJ used the medical-vocational rules as a framework for decision making and considered the testimony of the VE and determined there were other jobs existing in significant numbers in the national economy which Plaintiff could perform (TR. 21-22). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 22).

On appeal to this Court, Plaintiff alleges that: (I) the ALJ erred at step three by not finding Plaintiff disabled under Listing 1.02 and by not considering whether he could ambulate effectively; (II) that the ALJ erred in failing to take into account Plaintiff's obesity; and (III) that the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician.

## MEDICAL EVIDENCE

In December 2004, Plaintiff underwent surgery on his right knee to repair medial and lateral meniscal tears (TR. 163-164). Also in December 2004, Plaintiff underwent surgery on his palate to alleviate his obstructive sleep apnea (TR. 185, 189-190).

In March 2005, Plaintiff was examined by John R. Houck, Jr., M.D., who found that Plaintiff was "dramatically improved" following his palate surgery; that the surgery site had healed very well; that he was able to breathe through his nose comfortably; and that his throat was much more open (TR. 210).

In April 2005, Plaintiff's knee surgeon, Richard A. Greisman, M.D., opined that

> For the current, he has a difficult time walking and performing his activities of daily living and it is for this reason, of his severe arthritis at a young age, that Mr. Walker is disabled and unable to return to his duties. He would benefit from vocational rehabilitation to see if

3

there is another job position. However, at Mr. Walker's current
educational state his abilities to gain a non labor job position, I feel
Mr. Walker should again be considered fully disabled

(TR. 225).

In August 2005, a physical RFC assessment was completed by agency physicians in which
they concluded that Plaintiff was able to occasionally lift and/or carry 20 pounds, frequently lift
and/or carry 10 pounds; stand and/or walk (with normal breaks) for about six hours in an eight
hour workday; and sit (with normal breaks) for about six hours in an eight hour workday (TR. 213).
Agency physicians further concluded that Plaintiff had no other exertional, postural, manipulative,
visual, communicative, or environmental limitations (TR. 212-220).

In October 2005, Plaintiff was examined by Thomas K. Tkack, M.D., who found that
Plaintiff had "just an awful limp" with medial instability; and that x-rays showed mostly medial
compartment degeneration and a varus deformity (TR. 221).  Dr. Tkack recommended that Plaintiff
either leave the knee alone and just live with it or that he have a total right knee replacement (TR.
221).

In November 2005, Plaintiff underwent total replacement of his right knee performed by Dr.
Greisman (TR. 224). In February 2006, Plaintiff underwent a knee manipulation after which mobility
was regained for approximately two weeks (TR. 224). In March 2006, Dr. Greisman found that
Plaintiff's knee was very stiff but stable (TR. 254-256). He consistently stressed to Plaintiff the need
for him to continue to regularly attend physical therapy sessions (TR. 254-256). Dr. Greisman also
stated that Plaintiff had not been "motivated to a satisfactory level" with regard to physical therapy
(TR. 224). In June 2006, Dr. Greisman reported that Plaintiff's knee was stable; that he was doing
well; and that he had been swimming, mountain climbing, and was not having significant difficulties
(TR. 250).

In July 2007, Dr. Greisman completed a medical assessment form in which he concluded
that Plaintiff could sit only a total of three hours in an eight hour work day; that he could stand only

a total of four hours in an eight hour work day; and that he could walk only a total of four hours in an eight hour work day (TR. 261). Dr. Greisman also opined that Plaintiff could not work an eight hour day at any level; that Plaintiff could only left less than ten pounds; that he could not use right leg controls; and that he must elevate his legs six hours a day (TR. 261).

At the hearing, Plaintiff testified that he usually elevates his right leg six hours a day or more; that his leg hurts immediately when he walks, stands or walks down steps; that he is able to do housework for about twenty minutes before he has to rest (TR. 400-401).

# I.

Plaintiff argues on appeal that the ALJ erred at step three by not finding Plaintiff disabled under Listing 1.02[1] (Major dysfunction of a joint(s)(due to any cause)) (See Plaintiff's Brief at pages 8-11). At step three of the sequential evaluation process, a claimant's impairment is compared to the Listings (20 C.F.R. Pt. 404, Subpt. P, App. 1). If the impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled. A plaintiff has the burden of

---

[1] ***Major dysfunction of a joint(s) (due to ay cause):*** Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:   A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

1.00B2b What we mean by inability to ambulate effectively. (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

proving that a Listing has been equaled or met. *Bowen v. Yuckert*, 482 U.S. at 140-42 (1987);

*Williams v. Bowen*, 844 F.2d at 750-51 (10th Cir. 1988). To be found disabled based on the

Appendix 1 Listing of Impairments, Plaintiff must show that his condition satisfies all of the specified

medical criteria of a particular Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (impairment

does not meet Listing if it has only some of the medical criteria, no matter how severe).  In her

decision, the ALJ is "required to discuss the evidence and explain why he found that [the claimant]

was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996). The decision as to

whether a Plaintiff has met a listing is a factual determination. *Hogg v. Sullivan*, 987 F.2d 328, 334

(6th Cir. 1993); *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir. 1995) (detailed listing analysis).

The ALJ's decision confirms that Plaintiff had a severe impairment of his right knee; but that

this impairment is not severe enough to meet or equal any impairment in the Listing of

Impairments (TR. 16-18).  Specifically, the ALJ found in her decision that

> The medical reports do not show findings of a loss of gait and station
> or lack of gross and fine manipulation lasting, or expected to last, for
> at least 12 continuous months. The claimant has not shown the
> consistent evidence of reflex loss, motor loss, sensory loss, muscle
> atrophy, or other findings over a period lasting, or expected to last,
> for at least 12 months to meet the requirements for listed
> musculoskeletal impairments

(TR. 18).

Plaintiff argues that the ALJ failed to provide any analysis to justify a conclusion that he

could ambulate effectively (See Plaintiff's Brief at pages 10-11).  What Plaintiff ignores is that he is

the only source of evidence as to his alleged inability to ambulate effectively. The ALJ correctly

observed in her decision that Plaintiff's own surgeon concluded that Plaintiff had the ability to stand

a total of four hours and walk a total of four hours in an eight hour work day (TR. 18, 261).

In her decision the ALJ provides a thorough and complete discussion of the medical

evidence (TR. 16-18).  As discussed above, the medical evidence fails to show that Plaintiff had an inability to ambulate effectively so as to satisfy Listing 1.02.

Thus, it appears that the ALJ fulfilled his duty under *Clifton* to discuss the evidence and explain why he found that the Plaintiff was not disabled at step three.  It further appears that the ALJ's findings are supported by substantial evidence.

## II.

Plaintiff further urges on appeal that the ALJ erred in failing to take into account Plaintiff's obesity when assessing his RFC to perform sedentary work pursuant to SSR 02-01p (See Plaintiff's Brief at page 11).  The medical record fails to establish that Plaintiff's obesity caused any work-related limitations beyond those mentioned by the ALJ in his RFC assessment (TR. 18-19). The ALJ found that Plaintiff was limited to sedentary work involving only occasional climbing and stooping, and not involving balancing, kneeling, crouching, climbing ropes or scaffolds, and crawling (TR. 19). Plaintiff's own statements do not reflect that his obesity caused any physical limitations. Plaintiff failed to allege that his obesity was of any significance in his application materials nor was it mentioned at the administrative hearing (TR. 96). Thus, it appears that the ALJ properly considered Plaintiff's obesity in determining his RFC. (See *SSR 02-01p*).

## III.

Plaintiff also argues that the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician, Dr. Greisman (See Plaintiff's Brief at pages 11-12). Specifically, Plaintiff contends that the ALJ improperly rejected the July 2007 opinion of Dr. Greisman that Plaintiff could not "work an 8 hour day at any level" even if permitted the option to sit or stand alternatively with usual breaks (TR. 261).

If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).  In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit

outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In her decision the ALJ provided a detailed and thorough review of the medical evidence. She also provided specific legitimate reasons for disregarding the opinions of Plaintiff's treating physician, Dr. Greisman (TR. 18). In her decision the ALJ mentioned the opinions of Dr. Greisman and correctly observed that

> Objective medical support for Dr. Greisman's July 2007 assessment was not provided as Dr. Greisman did not attach then-current treatment or progress notes to the assessment form. As of February 16, 2007, the date of the last available treatment notes, the claimant was experiencing little discomfort and getting around well, and Dr. Greisman was happy with his progress. In any event, the claimant's impairments have limited his ability to work. However, considered alone, the objective medical evidence does not support a finding of inability to engage in substantial gainful activity

(TR. 18).

Thus, it appears that the ALJ properly considered the opinions of Plaintiff's treating physician, Dr. Greisman.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**. The parties are advised of their right to object to these findings and

recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED on September 14, 2009.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE